IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELITE SPORTSWEAR PRODUCTS, INC.,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 05-CV-5181 |
| | : | |
| **NEW YORK LIFE INSURANCE COMPANY,** | : | |
| Defendant | : | |

### MEMORANDUM OPINION

**TIMOTHY R. RICE**                                                                                                   **October 24, 2006**
**U.S. MAGISTRATE JUDGE**

      The parties have filed cross motions for summary judgment. Following oral argument on October 12, 2006, and upon consideration of the parties' submissions, I grant New York Life Insurance Company's ("NYLIC") motion for summary judgment. I find there is no genuine issue of material fact concerning the application of Pennsylvania's two-year statute of limitations governing tort causes of action to bar Elite Sportswear Products Inc.'s ("Elite") claims. Alternatively, I find no genuine issue of material fact that the class action settlement agreement in <u>Willson, et al. v. New York Life Insurance Co., et al.</u>, No. 94-127804 (N.Y. Sup. Ct. 1995) bars Elite's claims under the doctrines of release and res judicata. I further find there is no genuine issue of material fact to the extent Elite alleges a breach of contract because Elite has presented no evidence of a breach, cannot identify any breached provision, and NYLIC has provided sufficient evidence to demonstrate the policies' terms were carried out.

      Elite's cross motion for summary judgment is without merit.[1] Although the motion

---

[1] Elite's reply and cross motion for summary judgment present no new substantive evidence beyond that provided by NYLIC. To support the alleged discovery dispute, Elite

requests summary judgment, it actually seeks to prevent NYLIC from asserting its affirmative defenses relating to the Willson class action settlement. As grounds for relief, Elite represents that NYLIC was less than forthcoming in discovery by not providing initial disclosures, refusing to answer certain interrogatories, and refusing to produce certain documents.² Elite never filed a motion to compel discovery. When given the opportunity at oral argument, Elite could not identify any prejudice from NYLIC's alleged delay in informing Elite of the class action settlement in Willson. See H'rg Tr. 44:11-46:24. On July 17, 2006, NYLIC disclosed the caption of the Willson settlement in response to interrogatories. Pl. Mot. Summ. J. Ex. B at 7. Thus, Elite had ample time to respond to the affirmative defense, and could have accessed the terms of the Willson settlement agreement through the New York State court system. Moreover, notwithstanding the alleged prejudice it suffered, Elite was able to provide this Court with a five-page summary of the Willson case. See Pl. Mem. Law Supp. Mot. Summ. J. at 9-14.³

---

submitted NYLIC's objections and answers to interrogatories and requests for production of documents. Rather than attaching the relevant portions of Mr. Wachowski's deposition to its filings, Elite "demand[ed]" NYLIC introduce the deposition in its entirety. Elite does not provide citations to evidence for nearly half of its counter-statement of material facts: paragraphs 1, 3, 12, 13, 17, 20, 29-31, 34-36, 39-41, 44, 46, 47, 49-57, 59, 61-72, and 74-76. I consider only the evidence before me, and note Elite's apparent inability to provide further factual support during oral argument, see H'rg Tr. 33:5-20, 54:2-9, and Elite's ability to introduce all or any portion of any relevant deposition with its filings in this case.

² Elite asserts NYLIC did not include the class action settlement agreement in its motion for summary judgment. This contention lacks merit. See Def. Ex. 14. Elite also asserts NYLIC did not include any evidence that it performed any obligations of the settlement. This contention is also meritless. See Def. Ex. 20 (affidavit of Rita Gladstone indicating NYLIC sent class notices to Elite, in compliance with the settlement agreement).

³ It appears from Elite's filings and oral argument it objects to the fact of the Willson settlement agreement, and that "class action lawyers walked away with 22 million dollars in cold, hard cash. . . ." See Pl. Mem. Law Supp. Mot. Summ. J. at 14-17.

I.       Elite's Claims

Elite filed its diversity complaint on September 20, 2005 seeking an "accounting" of the correct cash values and death benefits for four life insurance policies issued by NYLIC.[4] Three of the policies insure the life of Edward J. Wachowski, Elite's chief executive officer: policy numbers 37939362 ("Policy A"), 42370510 ("Policy B"), and 62381165 ("Policy C"). The other policy insures the life of Dr. Sydney Ann Beckett, Elite's president: policy number 41720780 ("Policy D").[5] The Complaint also seeks compensatory and punitive damages, along with interest, attorney's fees, and costs.

Elite alleges NYLIC failed in its duty to advise Elite of the existence of,[6] and negligently misapplied, dividends for Policies A, B, and D in a calculated effort to reduce the cash values and death benefits of the policies. These dividends were allegedly sufficient to cover the premiums due on the policies, and NYLIC breached its duty to apply the dividends to the premiums. Elite also claims NYLIC induced Elite to charge loans to Policies A, B, C, and D through false and fraudulent representations.[7]

---

[4] NYLIC provided a full "accounting" of all policies, as required by this Court, in April, 2006.

[5] NYLIC asserts Elite lacked standing to bring suit regarding Policies B and C. However, during oral argument, NYLIC conceded Elite's standing to bring suit on all policies. H'rg Tr. 29:5-30:19.

[6] During his Fed. R. Civ. P. 30(b)(6) deposition for Elite, Wachowski admitted Elite does not contest that NYLIC informed Elite of the dividend amounts. Wachowski Dep. at 277:1-7.

[7] The Complaint primarily alleges fraudulent misrepresentation and negligent application of dividends. Moreover, the Complaint seeks unspecified compensatory and punitive damages. During Wachowski's deposition, he could not identify any contractual breach. Wachowski Dep. at 70:4-73:1. When given the opportunity at oral argument, Elite's counsel was unable to cite any breached provision. H'rg Tr. at 63:16-19, 66:7-21, 56:9-23.

II.     Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). I must resolve all justifiable inferences in the non-moving party's favor. Sommer v. The Vanguard Group, 461 F.3d 397, 403 (3d Cir. 2006). The moving party, here NYLIC, bears the burden of showing the record reveals no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party, here Elite, must go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial. Id. However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"; it must produce competent evidence supporting opposition. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). I may not consider evidence on a motion for summary judgment that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n.13 (3d Cir. 1999).

To defeat a motion for summary judgment, factual disputes must be both material and genuine. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "material" if it is predicated upon facts that are relevant and necessary and that may affect the outcome of the matter pursuant to the underlying law. Id. An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving parties. Id. at 248-49. Summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, because such a failure as to an essential

element necessarily renders all other facts immaterial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Thus, if there is only one reasonable conclusion from the record regarding the potential verdict under the governing law, summary judgment must be awarded to the moving party.  Anderson, 477 U.S. at 250.

      A.      Statute of Limitations

Summary judgment bars Elite's tort claims under Pennsylvania's statute of limitations because NYLIC has established there are no genuine issues of material fact,[8] and Elite has not shown beyond the pleading that there are genuine issues of material fact.  In a diversity of citizenship case, I apply state substantive law and federal procedural law.  Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996).  Application of the statute of limitations is considered a decision of substantive law, and therefore, Pennsylvania law applies.  Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 2006) (citing Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991)).  Moreover, Pennsylvania tolling principles apply.  Wilson v. Garcia, 471 U.S. 261, 266-

---

[8] Although NYLIC did not raise the affirmative defense of the statute of limitations in its March 6, 2006 answer, as required by Fed. R. Civ. P. 8(c), the defense will be considered.  See Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1374 (3d Cir. 1993) (affirmative defense considered because, although raised for the first time in a motion for summary judgment, the non-movant had not argued it was prejudiced by the delay and the defense was capable of review as a matter of law due to undisputed facts); Charpentier v. Godsil, 937 F.2d 859, 864 (3d Cir. 1991) (no waiver where defense raised at a pragmatically sufficient time and the plaintiff is not prejudiced in its ability to respond); Prinz v. Greate Bay Casino Corp., 705 F.2d 692, 694 (3d Cir. 1983) (issue treated in all respects as if it had been raised in the pleadings where it is tried with the express or implied consent of the parties) (citing Fed. R. Civ. P. 15(c)).

Elite and NYLIC have litigated the applicability of the statute of limitations as if the defense was raised in the Answer.  Moreover, Elite was provided a "Statement of Account" in April, 2006, which included exhibits listing the dates each loan was charged to the policies.  Thus, Elite has failed to object to the issue and cannot show prejudice.  See also Fed. R. Civ. P. 15(a) (pleading may be amended when justice so requires).

67 (1985); Debiec v. Cabot Corp., 352 F.3d 117, 129 (3d Cir. 2003).

Tort claims are subject to Pennsylvania's two-year statute of limitations. 42 Pa. Cons.Stat.Ann. § 5524. The limitations period begins to run "as soon as the right to institute and maintain suit arises," Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005), i.e., generally when the injury is sustained, Bohus, 950 F.2d at 924. Under most circumstances, "[m]istake, misunderstanding, or lack of knowledge" does not toll the statute of limitations. Fine, 870 A.2d at 857 (citations omitted). However, when the underlying claim sounds in fraud, the statute of limitations is tolled "until the plaintiff learns or reasonably should have learned through the exercise of due diligence of the existence of the claim." Beauty Time, Inc. v. Vu Skin Sys., Inc., 118 F.3d 140, 148 (3d Cir. 1997) (rejecting limit on tolling to cases where defendants concealed the fraud). "Storm warnings" of possible fraud are sufficient to trigger the statute of limitations. Id. at 148 (citing Ciccarelli v. Gichner Systems Group, Inc., 862 F.Supp. 1293, 1308 (M.D. Pa. 1994)).[9] Moreover, reasonable diligence is:

> a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case. . . . [T]here are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. . . . A plaintiff's actions must be evaluated, therefore, to determine whether he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others. In other words, a party is not under an absolute duty to discover the cause of his injury. Instead, he must exercise only the level of diligence that a reasonable man would employ under the facts and circumstances presented in a particular case.

Toy v. Metropolitan Life Ins. Co., 863 A.2d 1, 7 (Pa. Super. 2004) (citations omitted).

---

[9] Although a determination of reasonableness is normally left to the fact-finder, where the facts are so clear that reasonable minds could not differ, the date plaintiff reasonably should have known of the claim may be determined as a matter of law. Cochran v. GAF Corp., 666 A.2d 245, 248 (Pa. 1995); see also Anderson, 477 U.S. at 248-49.

NYLIC met its burden by producing evidence showing there is no genuine issue of material fact that it is entitled to judgment as a matter of law concerning the application of Pennsylvania's statute of limitations. The Complaint - - which for some reason arranged each count by policy and not cause of action - - alleges NYLIC made "false and fraudulent misrepresentations" causing Elite to borrow sums of money to pay insurance premiums. Compl. ¶¶ 21 (Policy A), 38 (Policy B), 44 (Policy C), 61 (Policy D). The Complaint further alleges torts concerning the payment and application of dividends. Compl. ¶¶ 19, 20, 33, 34, 36, 53-57, 59.

When purchasing life insurance coverage and while making inquiries during the life of the policies, Wachowski was advised by his only contact with NYLIC, Lee Foreman, a NYLIC agent.[10] Wachowski Dep. at 44, 53, 62, 116, 148, 160, 204, 212, 267, 291, 310. Specifically, Foreman advised Wachowski:

• after being asked about the premium loans following their issuance from 1990 to 2000, "it was [Wachowski's] money being used[,] [n]ot New York Life's money, [Wachowski's] money," id. at 159-60, 148:11-18;

• at various times after 1990, the loans against the policies would never have to be paid off, id. at 53:4-9;[11]

• after 1994 that the whole life policy (Policy A) would continue to grow, and no more

---

[10] Elite did not depose Lee Foreman, claiming it would be too costly. H'rg Tr. 50:20-52:11.

[11] Wachowski agreed that: "[n]ow going back to your conversation with Mr. Foreman, he told you you would never have to pay the loan back, correct[.]" Wachowski Dep. at 204:13-17. When asked, "if you hold onto these policies until you die, he is right; correct[,]" he responded, "[t]hat's what he told me[.]" Id. at 204:18-21. Later in the deposition Wachowski testified: "[a]nd [it is] proven by the note I wrote . . . the only time that it will ever be paid is when I check out." Id. at 231:10-13.

premiums would need to be paid, id. at 53:13-23, 267:3-11; and

 • after the first loan was issued in 1990, concerning the loan designations, "this is just paper documents, it means nothing to you," id. at 212:17-23.

 Wachowski also alleged Foreman pressured him into buying Policy B in 1986, saying it would double or triple his death benefit without any outlay of money. Id. at 310:14-24. Wachowski could not recall any other alleged misrepresentations beyond Foreman's claim that the loans would not have to be repaid and no more premiums would need to be paid after 1994.[12] Id. at 61:20-62:23.

 Shortly after the loans were first issued in 1990, Wachowski received periodic notices of loan interest rates and balances, which often requested a loan payment. Id. at 237:11-238:24. Wachowski and Foreman discussed the role of the loans when Wachowski "started receiving notices . . . about a loan interest accruing. . . . in the first couple of years," i.e., the early 1990s. Id. at 44:2-10, 47:19-48:12. In fact, Wachowski had questioned the loans so many times, id. at 203:4-7, that he "finally" got an attorney, id. at 203:11-12. Other than questioning his agent, Wachowski did not do anything about the loan balances until he felt they got too high. Id. at 238:14. When asked about ignoring letters from NYLIC, Wachowski conceded: "I guess I was not as smart as I should have been. I should have acted quicker on this." Id. at 242:4-8.

 In addition, Wachowski received annual policy summaries and anniversary notices. Id. at

---

[12] After 1994, Elite was put on inquiry notice that Foreman's statement that Elite would not need to pay premiums after 1994 was not true, and perhaps fraudulent. Elite continued to remit payments after 1998. Def. Ex. 1 at "Ex. A." The uncontested facts show Elite waited nearly seven years to file suit, five years after the statute of limitations had expired.

198, 204:4-12, 219:5-23, 227:11-17, 236:5-237:10; see Def. Ex. 10.[13]  In particular, he received and reviewed the November 7, 1994 anniversary notice for Policy B, which showed a loan balance.  Id. at 219:18-220:10; Def. Ex. 10 at 000294.  By 1999, he knew loans were being taken out, and he questioned them.[14]  Wachowski Dep. at 211:7-15.

NYLIC has produced copies of the anniversary notices for Policies A, B, C, and D that were sent to Elite and Wachowski dating back to November 8, 1994.  Def. Ex. 10 at 000196, 000294, 000439, 000497.  Policy A's 1994 notice included a "current loan balance" of $36,340.45.  Id. at 000196.  The 1994 notice for Policy B included a loan balance of $45,598.13.  Id. at 000294.  The 2000 notice for Policy C listed a loan balance of $1,540.39.  Id. at 000439.  Policy D's 1995 notice contained a loan balance of $16,512.94.  Id. at 000497.  With the exception of Policy C, which does not receive dividends, the anniversary notices detailed how the dividends would be used to purchase paid up additional insurance.  Id. at 000196, 000294, 000497.[15]

---

[13] Without any factual support, and in contravention of Wachowski's deposition, Wachowski Dep. at 198, 204:4-12, 219:5-23, 227:11-17, 236:5-237:10, Elite maintains Wachowski did not receive the annual statements every year.

[14] Wachowski candidly admitted he should have hired an attorney in 1999. Wachowski Dep. at 211:7-15.

[15] For example, the notice stated:

> Your 1995 dividend will be $845.51.  Based upon your current dividend option, your dividend will purchase $2,204.00 of paid up additional insurance on your anniversary date.  Your total paid up additional insurance will then be $13,559.00.  The cash value of your paid up additional insurance will increase by the amount of your dividend and is reflected in your anniversary cash value shown above.

Def.'s Ex. 10 at 000497. Moreover, the anniversary notice warns the policy holder: "[i]n order to keep our records accurate, it is important to alert us when you wish to change

The policies' premiums were sporadically paid by loan from 1990 to 1999. The premium for Policy A was first paid by loan in 1990, and last paid by loan in early 1999. Def. Ex. 1 at "Ex. A." The premiums for Policy B were first paid by loan in 1990, and last paid by loan in 1999. Id. at "Ex. D." The only loans associated with Policy C were last taken in 1989.[16] Id. at "Ex. G." Policy D's premiums were first paid by loan in 1991, and last paid by loan in 1994.[17] Id. at "Ex. I." Interest has accrued on each of these loans since their issuance. Id. at "Ex. C, F, K."[18] After the first premium loan was issued for Policy A, seven interest payments were made by remittance, i.e., sent to NYLIC by Elite, with the last occurring in 1999. Id. at "Ex. C." After the first premium loan was issued for Policy B, forty-two interest payments were made by remittance. Id. at "Ex. F." Thirteen interest payments were made by remittance for Policy D after the first premium loan was issued. Id. at "Ex. K."

The foregoing evidence is undisputed.

---

your policy information. If you would like to change your beneficiary, your dividend option . . ." Id.

[16] In 1987, a loan was charged to Policy A to pay the premiums for Policy C. Def. Ex. 11 at 000022.

[17] Cash loans were taken from Policy D as late as October 4, 2004. Id. at "Ex. K." However, the Complaint does not challenge NYLIC's practice of providing cash loans. In fact, the Complaint's mention of loans for Policy D concerns an accounting, the automatic premium loan option, and the use of loans to pay premiums. Pl. Compl. at ¶¶49-51, 58, 61. Because the cash loans charged to Policy D are not mentioned in the Complaint, they will not be considered. Thus, the 2004 cash loan does not alter the statute of limitations analysis.

[18] Dividends continued to be applied to paid-up additions even after this suit was filed. Def.'s Ex. 1 at "Ex. B, E, J." However, Elite's fraud allegations are limited to the application of premium loans. Moreover, because the application of dividends is governed by the contracts entered into freely by Elite and NYLIC, the contracts were carried out according to their terms, and those contracts do not violate public policy, Elite's claims of negligent misapplication of dividends must fail.

The evidence shows the last loan was issued in 1999 to pay a policy premium - - six years before the Complaint was filed.  NYLIC established Wachowski knew about loan balances immediately after the loans were issued.  Wachowski's undisputed deposition testimony shows the periodic statements - - which he admitted receiving shortly after the first loans were issued in 1990 - - requested remittance to pay loan balances.  Wachowski Dep. at 237:11-238:24.  In 1994, 1995, and 2000, for example, Wachowski and Elite received anniversary statements listing loan balances.  Moreover, sixty-two interest payments were remitted by Elite after the first premium loans were issued in 1990.

Thus, Wachowski and Elite knew or reasonably should have known through the exercise of due diligence, see Beauty Time, Inc., 118 F.3d at 148, Foreman's statements were inconsistent with how the loans actually were being administered by NYLIC.  A reasonable person, when faced with the notices, would have heard the storm warnings of the alleged fraud.  See id. Additionally, when maintenance of the loan balances required payment on the interest, a reasonable person would investigate beyond Foreman's statements.  The moment Elite had to remit payment for "paper documents" that "mean[t] nothing" to Elite, it was no longer reasonable for Elite to sit idly by and expect the statute of limitations to stay in suspense.  Elite's interest payments on the loans, combined with evidence that it was repeatedly made aware of the loan balances through anniversary statements and annual notices - - contrary to Foreman's assurances - - was sufficient to trigger the two-year statute of limitations well before the final loan was issued in 1999.  Thus, NYLIC has met its burden of showing there is no genuine issue of material fact that Elite's claims are barred by the statute of limitations.

Elite has presented no evidence placing any material fact in genuine dispute.  In fact, Elite

-11-

has relied upon NYLIC's evidence. Elite claims it did not learn of NYLIC's "scheme" until 2003. To support this proposition, Elite cites four paragraphs of its counter statement of facts, which do not cite any evidence in the record. See Pl. Mem Law Opp'n Def. Mot. Summ. J. at 7; Pl. Counter Statement Material Facts at ¶¶ 53, 59, 60, 74. Because I find NYLIC met its burden as the moving party, and Elite has not met its burden, NYLIC is entitled to summary judgment.

        B.      Willson Settlement Agreement

Elite asserts the class action settlement in Willson is inapplicable because Elite and Wachowski did not receive notice of the class action. Although the record shows Wachowski was not subjectively aware of the class action suit, Wachowski Dep. at 301:18-22, his subjective awareness is of no consequence in determining the preclusive effects of the Willson settlement.

Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust, 339 U.S. 306, 314-15 (1950). After appropriate notice is given, if absent class members do not opt out of the class action, they are bound by the court's actions - - including settlement - - with no requirement of actual notice. Reppert v. Marvin Lumber & Cedar Co., Inc., 359 F.3d 53, 56-7 (1st Cir. 2004) (citations omitted); see also Montgomery v. Beneficial Consumer Discount Co., 2005 WL 497776 at *6 (E.D. Pa. Mar. 2, 2005) (Surrick, J.) (actual notice not required).

Undisputed evidence shows the Willson certified class included those having an ownership interest in certain NYLIC policies from 1982 until 1994, which included Policies A, B, C, and D owned by Elite. Def. Ex. 15 at 2. Class members were notified through direct mailings and publication in the New York Times, the Wall Street Journal, USA Today, the daily

newspaper with the largest circulation in each of the fifty states and the District of Columbia, and the newspapers with the 20 largest circulations nationwide. Def. Ex. 17 at 26-27; see also Def. Ex. 16 (class notice sent to members). Although not part of the formal notice procedures, nearly 200 articles and newspaper columns reported the settlement. Def. Ex. 17 at 28. Class notices were mailed to the correct addresses for Elite and Wachowski for Policies A, B, C, and D. Def. Ex. 20, 21. Neither Wachowski or Elite responded to the notices. Id. The Willson court found the notice was the best practicable notice, reasonably calculated to apprise the members of the pendency of the action and ability to raise objections, and adequate and sufficient to satisfy due process. Def. Ex. 15 at 10, ¶ 8.

The notice given for the Willson settlement exceeded the requirements of due process. See, e.g. Montgomery, 2005 WL 497776 at *6 (notice sufficient where publication occurred twice in nation's largest newspaper and notices were mailed to each individual); Reppert, 359 F.3d at 57 (notice sufficient even where undisputed record showed plaintiff did not receive mailed notification, where notifications were mailed to each known class member and published in 33 newspapers); see also Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1561 (3d Cir. 1994) (finding class notice in state court sufficient to justify summary judgment in federal court). Thus, Elite's argument fails.

1. Release

Elite's current claims were released in the Willson settlement agreement and cannot be raised here. A suit can be barred by a previous settlement in another suit by either release or res judicata. Sandler Assoc. L.P. v. BellSouth Corp., 818 F.Supp. 695, 704 (D. Del. 1993), aff'd 26

F.3d 123 (3d Cir. 1994), cert. denied 513 U.S. 986 (1994).[19]  Where notice was constitutionally sufficient and absent class members were given the opportunity to object to the settlement, absent members are bound by the release, even if they were not given the ability to opt out of the class. See  Grimes, 17 F.3d at 1561.

The release doctrine bars subsequent litigation based on claims released in an order approving a class action settlement.  See Grimes, 17 F.3d at 1563 (plaintiffs who were class members in prior suit were bound to prior judgment approving broad release of claims); Sandler, 818 F.Supp. at 704 (claims dismissed that were released in a state class action settlement agreement).  Moreover, federal courts can release claims not raised in the previous suit's complaint as long as those claims are based on the same factual predicate as those asserted in the subsequent suit.  In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 326 & n.82 (3d Cir. 1998) (citations omitted).  To bar claims, the release must: (1) apply to the plaintiff; (2) circumscribe the asserted claims; and (3) be legally enforceable.  Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29, 32 (1st Cir. 1991); Chartener v. Provident Mutual Life Ins. Co., 2004 WL 1091027 at *2-3 (E.D. Pa. May 13, 2004) (Baylson, J.).

Elite and Wachowski are members of the Willson class, and thus, the release applies. Elite's claims are based on the same factual predicate as the claims in Willson.  Compare Elite Compl. ¶¶ 8-10, 15-21, 24-27, 32, 34-38, 41-45, 49-50, 55, 57-61 with Def. Ex. 12, Willson

---

[19] "[A] judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of the [Full Faith and Credit] Act." Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 374 (1996); see 28 U.S.C. § 1738.  Moreover, a state court judgment must be treated in the same way it would be treated in the rendering state. Id. at 373.

Compl. ¶¶ 11(a)(i)-(ii), 11(c), 11(d), 15(a)(i), 15(c)(ii).  Elite's claims were squarely addressed and released in the Willson release through its broad terms.  See Def. Ex. 14 at 56-62 (class members shall not institute suit, and release NYLIC from: "any and all causes of action . . . that have been, could have been, may be or could be alleged or asserted now or in the future . . . on the basis of, connected with, arising out of, or related to . . .").  Elite's claims regarding Foreman's statements that no premiums would need to be paid after 1994 are covered by the release.  See Def. Ex. 14 at 57 (representations concerning the number of out-of-pocket payments).  Elite's claims that it was fraudulently induced into using loans to pay premiums are included in the release.  See id. at 59 (the use of a loan to maintain a policy).  Finally, Elite's claims regarding dividend treatment are also covered by the release.  See id. at 59 ("any other matters relating to dividends").

The Willson settlement agreement, which affected more than two million class members, has been repeatedly applied to bar subsequent litigation.  See, e.g. Manji v. New York Life Ins. Co., 945 F.Supp. 919 (D. S.C. 1996); see also In re Prudential Ins. Co., 148 F.3d at 317 (Willson settlement received the praise of courts, academic and industry experts, and various independent organizations).  There is nothing in the record to suggest the settlement agreement and its incorporated release are not legally enforceable.  Rather, the law requires such enforcement.

NYLIC has met its burden, Elite cannot point to a genuine issue of material fact where none exists, and thus, NYLIC is entitled to summary judgment.  Elite's instant claims are barred by the release executed in the Willson settlement agreement.

        2.        Res judicata

Elite's claims also are barred by the class settlement in Willson under the doctrine of res

judicata. Res judicata "prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties might have, but did not assert in that action." Williams v. Lehigh County Dep't Corrections, 19 F.Supp.2d 409, 411 (E.D. Pa. 1998) (Katz, J.) (citing Edmunson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993)). Res judicata applies where: (1) there is a final judgment on the merits in a prior suit; (2) the same parties or those in privity were involved in the prior suit; and (3) the subsequent suit is based on the same cause of action. General Electric Co. v. Deutz AG, 270 F.3d 144, 158 (3d Cir. 2001); see also Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc., 159 F.3d 129, 139-40 (3d Cir. 1998) (the same three requirements apply under New York law with New York applying a transactional analysis to the "same claim" requirement: all claims arising out of the transaction or series of transactions) (citing Ryan v. New York Telephone Co., 467 N.E.2d 487, 489-90 (N.Y. 1984); O'Brien v. City of Syracuse, 429 N.E.2d 1158, 1159 (N.Y. 1981)); accord International Prisoners' Union v. Rizzo, 356 F.Supp. 806, 809 (E.D. Pa. 1973) (Masterson, J.) (members of prior class action are precluded from raising any claim which was or could have been raised in prior suit).

The Willson class action settlement is a final judgment on the merits. See Def. Ex. 17, 18, 19. Elite and Wachowski were members of the Willson class and the Willson claims are the same as those in the instant case. Thus, Elite's claims are barred by res judicata.[20]

      C.     Contract claims

NYLIC has established there is no genuine issue of material fact concerning Elite's

---

[20] NYLIC also asserts Elite is enjoined from prosecuting this action. Because Elite's claims are barred by release, res judicata, and the statute of limitations, the permanent injunction in Willson needs no discussion.

contract claim, Elite has not met its burden, and thus, NYLIC is entitled to summary judgment.

To establish a breach of contract, Elite must show: (1) the existence of a contract and its essential terms, (2) breach of a duty imposed by the contract, and (3) the damages that result. Lackner v. Glosser, 891 A.2d 21, 30 (Pa. Super. 2006) (citing Gorski v. Smith, 812 A.2d 683, 692 (Pa. Super. 2002)).

When interpreting a contract, the intent of the parties as expressed in the words of the agreement controls where the language is unambiguous. Atkinson v. LaFayette College, 460 F.3d 447, 452 (3d Cir. 2006) (citing Martin v. Monumental Life Ins. Co, 240 F.3d 223, 232-33 (3d Cir. 2001)); Bohler-Uddelholm America, Inc. v. Elwood Group, Inc., 247 F.3d 79, 92-93 (3d Cir. 2001) (citing Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982); Krizovensky v. Krizovensky, 624 A.2d 638, 642 (Pa. Super. 1993)). Summary judgment is appropriate if the contract "is subject to only one reasonable interpretation." Atkinson, 460 F.3d at 452 (citing Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999)).

Wachowski applied for Policy A in 1984, and NYLIC issued it on November 8, 1984. Def. Ex. 3; Wachowski Dep. at 83:17-84:6. Wachowski signed the application, which had "APL," or Automatic Premium Loan, selected under "Plan," and "Pd.-up Addn." selected for "Div. Option." Def. Ex. 3; Wachowski Dep. at 98:2-11, 102:3-9; Pl. Counter Statement Material Facts at 10, ¶ 26 (Elite admits Wachowski elected to apply dividends to purchase additional coverage). Policy A described APL as: "[i]f elected, APL provides an automatic loan which pays an overdue premium . . . . APL can be elected in the application. . . . You can cancel this election for future premiums by telling us in your signed notice." Def. Ex. 3 at 000630; see Pl. Counter Statement Material Facts at 5, ¶ 13 (Elite admits Policy A contains provisions relating to

loans being taken against the policy's value).  Policy A also includes a provision describing interest on the loans.  Def. Ex. 3 at 000638.

"Paid-up Addition" is described as applying dividends: "to provide paid-up life insurance . . . .  Before the insured's death, you can surrender paid-up additions for their cash value . . . The amount of this insurance in force at the insured's death will be part of the proceeds."  Def. Ex. 3 at 000631.  Another of the four dividend options, which Wachowski did not elect, was "Premium Payment," described as: "[a]pplied toward payment of a premium. . ."  Id.

At various times during the life of Policy A, premiums were paid by loans charged to Policy A.  Def. Ex. 1 at "Ex. A, C."  The dividends from Policy A were applied to purchase additional insurance.  Def. Ex. 1 at "Ex. B."  Even after subtracting the loan balance, Policy A's death benefit is greater now than it was when purchased.  Def. Ex. 9; Pl. Counter Statement Material Facts at 11, ¶ 28 (Elite admits this fact).

The contract is clear and unambiguous, and thus my inquiry is limited to the four corners of the document.  The undisputed facts show Elite entered into the contract providing that dividends could be used to purchase additional coverage and loans could be used to pay premiums that were not remitted by the policyholder.  The policy was carried out accordingly. Elite can point to no breach in the contract, and I have found no evidence, nor any genuine issue of material fact, suggesting a breach.  Thus, NYLIC is entitled to summary judgment on Elite's contract claims pertaining to Policy A.

For the same reasons, NYLIC is entitled to summary judgment on Elite's contract claims for Policies B and D.  The Automatic Premium Loan and Paid-up Addition terms are the same for Policies A, B, and D.  See Def. Ex. 3 at 000630-31, Ex. 4 at 000669-70, Ex. 6 at 000742-43.

Each policy application elected Automatic Premium Loan and Paid-up Addition. See Def. Ex. 3 at 000647, Ex. 4 at 000696, Ex. 6 at 000760. Accordingly, each policy application was signed by a representative of Elite (A and B were signed by Wachowski; D was signed by Beckett). Loans were occasionally charged to each policy to pay the premiums when the premiums were not remitted, and the dividends were used to purchase additional coverage. Because the performance of the policies, the elections made, and the terms of the policies are the same, NYLIC is entitled to summary judgment for each. See Wachowski Dep. at 293:13-24 (allegations concerning Policy A are similar, if not identical, to all other policies in the Complaint).[21]

For the foregoing reasons, New York Life Insurance Co. is entitled to summary judgment on all of Elite Sportswear Products, Inc.'s claims. An appropriate order follows.

---

[21] Elite does not claim that Policy C's dividends were applied in contravention of the contract, because it is undisputed Policy C does not earn dividends, Def. Ex. 1; Pl. Counter Statement Material Facts at 15, ¶ 38. Moreover, Elite's Complaint regarding Policy C raises allegations concerning only fraudulently induced loans used to pay premiums, which are barred by the two-year statute of limitations for tort claims, and does not raise any discernable contract claim.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELITE SPORTSWEAR PRODUCTS, INC.,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 05-CV-5181 |
| | : | |
| **NEW YORK LIFE INSURANCE COMPANY,** | : | |
| Defendant | : | |

## ORDER

AND NOW, this 24th day of October, 2006, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

1. Defendant's motion for summary judgment is GRANTED;

2. Plaintiff's motion for summary judgment is DENIED; and

3. Judgment is entered in favor of defendant New York Life Insurance Company and against plaintiff Elite Sportswear Products, Inc.

BY THE COURT:

 /s/ Timothy R. Rice
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE